# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.,**[1] | Case No. 18-11272 (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for entry of an interim order and a final order, substantially in the forms attached hereto as Exhibits A and B (the "**Interim Order**" and the "**Final Order**," respectively, and together, the "**Proposed Orders**"), pursuant to sections 105(a), 363(b), 364, 503, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, the prepetition fixed, liquidated, and undisputed claims of certain critical vendors, subject to the conditions described herein; and (ii) authorizing the Debtors' banks and financial institutions (collectively, the "**Banks**") to honor all related checks and electronic transfer requests.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Paul W. Russo in Support of Chapter 11 Petitions and First Day*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

*Motions* (the "**First Day Declaration**"),[2] which was filed with the Court concurrently herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of the Debtors' chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The legal authority for the relief requested herein is sections 105(a), 363(b), 364, 503, 1107(a), and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

3.       On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.       The Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5.      Additional information about the Debtors' business, their capital and debt structure, and the events leading up to the Petition Date can be found in the First Day Declaration.

## Critical Vendors

6.      In the ordinary course of their business, the Debtors purchase goods and services from numerous third-party vendors.  With the assistance of their advisors, the Debtors have spent significant time reviewing and analyzing their books and records, consulting management, reviewing contracts, and analyzing historical practice to identify those vendors that are critical to the continued and uninterrupted operation of the Debtors' business (the "**Critical Vendors**").  In this process, the Debtors examined criteria including:

- whether a vendor is a sole- or limited-source or high-volume supplier of materials, parts, or services for production or delivery of critical inventory;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on comparable terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;[3] and

- whether certain specifications or other customer preferences prevent the Debtors from obtaining goods or services from alternative sources.

---

[3]     The Debtors' relationships with the Critical Vendors are based primarily on purchase order transactions.  The Debtors, however, may need to identify vendors as Critical Vendors even if the Debtors' relationships with those vendors are contractual.  Additionally, for contracts of a short duration or where the vendor is operating under a purchase order, there is a risk that failure to pay prepetition amounts may result in the counterparties refusing to renew those contracts or accept a new purchase order.  Moreover, to the extent the Debtors' relationships with Critical Vendors are contractual, the Debtors likely will assume the contracts with those Critical Vendors later in these chapter 11 cases, in which case the prepetition obligations owed to those Critical Vendors would be paid in full.  Accordingly, the relief requested herein should only affect the timing of payment of those Critical Vendor Claims and will not prejudice the rights of other parties in interest.

7.      Following this analysis, the Debtors identified Critical Vendors that provide essential materials, supplies, and certain other goods (the "**Critical Goods**") or essential services (the "**Critical Services**") that are closely integrated with the Debtors' business operations and customer relationships.  Any interruption or delay in the supply of those Critical Goods and Services could significantly and adversely impact the Debtors' ability to perform for their customers and cause irreparable harm to the Debtors' business and estates.

8.      There are three main categories of Critical Goods and Critical Services:  (i) raw materials; (ii) delivery services and related goods; and (iii) royalty fees.  The Debtors' business requires a ready source of raw materials and specialized Critical Goods, such as containers, seeds, plugs, containers, and shipping racks, and related Critical Services necessary to ensure the timely delivery of the Debtors' products.  In some cases, there is no alternative vendor for the Critical Goods and Services.  In other cases, alternative vendors cannot supply the required Critical Goods and Services in sufficient quantity, quality, or reliability, or they are unable to supply the required Critical Goods and Services on a cost-efficient and timely basis in the appropriate geographic areas.  Even if alternative vendors who possess the necessary qualifications, experience, and skills could be identified in a timely fashion, certain Critical Vendors are dictated by customer requests or requirements or have specific experiential knowledge about the Debtors' business operations, facilities, and customer demands developed over the course of the Critical Vendors' long-standing relationships with the Debtors that make it impossible or cost-prohibitive to replace those vendors.

9.      In addition to the raw materials and delivery services discussed above, the Debtors also require licenses to produce and sell certain branded products, and, in exchange for such licenses, the Debtors pay royalty fees.  The Debtors owe accrued royalty fees arising from

their prepetition operations, and, if these royalties go unpaid, the Debtors may not be able to produce or sell products that are required by key customers and may be subject to litigation or other demands. Accordingly, the Debtors' operations would be significantly disrupted absent payment of the royalty fees.

10.     Failure to maintain relationships with, and a steady supply of Critical Goods and Services from, these Critical Vendors will cause an interruption of the Debtors' business operations that could irreparably harm the Debtors by jeopardizing their efforts to successfully reorganize and, ultimately, maximize the value of their assets for the benefit of all creditors and stakeholders.

**<u>Critical Vendor Claims</u>**

11.     Based on their books and records and past experience, the Debtors estimate that they have approximately $20.7 million in outstanding prepetition trade payables. The Debtors' estimate of outstanding prepetition claims includes projected liabilities for certain goods and services that are not reflected in their accounts payable because they have not yet been invoiced for certain goods and services already received.

12.     The Debtors seek authority, in their sole discretion, to pay prepetition claims held by Critical Vendors (the "**<u>Critical Vendor Claims</u>**") on an interim basis in the aggregate amount of up to $2.5 million, and on a final basis in the aggregate amount of up to $5 million (the "**<u>Trade Claims Cap</u>**"). In determining the amount of the Trade Claims Cap, the Debtors carefully reviewed all of their vendors to determine which vendors could meet the stringent criteria used to identify the universe of potential Critical Vendors. Consequently, the Trade Claims Cap represents the Debtors' best estimate of how much in prepetition trade claims should be paid immediately to ensure a continued supply of Critical Goods and Services.

13.    The Trade Claims Cap represents less than 25% of the Debtors' estimate of aggregate prepetition trade claims.  Given the current state of the Debtors' business, the detailed protocol described herein for determining whether to make a Critical Vendor payment, and the risks associated with non-payment, the Debtors submit that this is a reasonable and appropriate cap on the expenditure of estate funds to satisfy certain prepetition claims.

**Terms and Conditions for Payment of Critical Vendor Claims**

14.    Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims only to the extent necessary to preserve their business.  The Debtors have designated a core group of employees who have experience in the Debtors' business, as well as the reorganization process, to review, assess, and potentially recommend payments to Critical Vendors.

15.    Moreover, the Debtors will use their commercially reasonable efforts to condition payment of Critical Vendor Claims upon each Critical Vendor's agreement to continue supplying goods and services on "Customary Trade Terms."[4]  The Debtors request that the Court approve the form of a Critical Vendor's agreement to extend Customary Trade Terms, which is attached hereto as Exhibit C (the "**Trade Agreement**").

16.    The Debtors propose that the Trade Agreement include, without limitation, the following terms:

- The amount of each Critical Vendor's estimated Critical Vendor Claim, accounting for any setoffs, other credits, and discounts thereto, as mutually determined in good faith by the Critical Vendor and the Debtors (but such amount will be used only for the purposes of determining such Critical Vendor's claim

---

[4]    As used herein, "**Customary Trade Terms**" are defined as the contractual or normal and customary trade terms, practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs) that were most favorable to the Debtors and in effect between the applicable Critical Vendor and the Debtors on a historical basis for the period within 180 days of the Commencement Date, or such other trade terms, practices and programs that are at least as favorable to the Debtors as those that were in effect during such time.

under the order approving this Motion and will not be deemed a claim allowed by the Court, and all rights of all interested persons to object to such claim shall be fully preserved until further order of the Court, unless such claim is waived by the Critical Vendor pursuant to the terms of the agreement);

- The Customary Trade Terms between such Critical Vendor and the Debtors, or such other favorable terms as the Critical Vendor and the Debtors may agree, and the Critical Vendor's agreement to provide goods and services in accordance with such terms;

- The Critical Vendor's agreement not to file or otherwise assert against the Debtors or their estates or any of their respective assets or property any lien (a "**Lien**"), regardless of the statute or other legal authority upon which such Lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors, and, to the extent the Critical Vendor has already obtained or otherwise asserted such a Lien, the Critical Vendor must take whatever actions are necessary to remove such Lien;

- The Critical Vendor's acknowledgment that it has reviewed the terms and provisions of the order approving this Motion and consents to be bound thereby; and

- The Critical Vendor's agreement that it will not separately seek payment for reclamation claims or claims pursuant to section 503(b)(9) of the Bankruptcy Code outside the terms of an order approving this Motion unless the Critical Vendor's participation in the program to pay Critical Vendor Claims pursuant to the order is terminated.

17.     If a Critical Vendor refuses to supply goods or services to the Debtors on Customary Trade Terms following receipt of payment on their Critical Vendor Claim, or fails to comply with any Trade Agreement, the Debtors seek authorization, but not direction, to, without further order of the Court, declare (i) that the Trade Agreement is terminated and (ii) that any payments made to the Critical Vendor on account of their Critical Vendor Claim be deemed to have been made on account of then-outstanding postpetition claims of such Critical Vendor and the Debtors may seek to recover or disgorge any payment made to such Critical Vendor on account of their Critical Vendor Claim to the extent that payments on account of such Critical Vendor Claim exceeds the then-outstanding postpetition claims of such Critical Vendor without

giving effect to any rights of setoff, claims, provision for payment of reclamation or section 503(b)(9) claims, or otherwise.

18.     The Debtors further propose that any Trade Agreement terminated as a result of a Critical Vendor's refusal to comply with the terms thereof may be reinstated if: (i) such determination is subsequently reversed by the Court after notice and a hearing following a motion by the Critical Vendor, for good cause shown, on the grounds that the determination was materially incorrect; (ii) the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor that a default had occurred; or (iii) the Debtors reach a favorable alternative agreement with the Critical Vendor.

19.     The Debtors also seek authority, in their discretion when circumstances are appropriate, to pay Critical Vendor Claims in the event that no Trade Agreement has been executed if the Debtors determine, in their business judgment, that payment of the Critical Vendor Claim is necessary for the preservation of the Debtors' estates and a formal Trade Agreement is unnecessary to ensure such Critical Vendor's continued performance on Customary Trade Terms (or such other terms that are mutually agreed to by the Debtors and such Critical Vendor), *provided*, *however*, if any vendor accepts payment pursuant to this Motion and, thereafter, does not continue to provide goods or services on Customary Trade Terms (or such other terms that are mutually agreed to by the Debtors and such Critical Vendor), regardless of whether or not a Trade Agreement has been executed, then:  (i) such payment may be deemed to be an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request; and (ii) upon recovery of the payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment has not been made.  If there exists an

outstanding postpetition balance due from the Debtors to such vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and such Critical Vendor will be required to repay the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**RELIEF REQUESTED**

20.     By this Motion, the Debtors seek entry of the Proposed Orders, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing, the Debtors to pay Critical Vendor Claims, subject to the terms and conditions set forth herein, up to an aggregate amount of $5 million  unless further authorization is obtained from the Court; and (ii) authorizing the Banks to rely on the Debtors' direction to pay amounts authorized under this Motion, provided that sufficient funds are available in the applicable account.

**BASIS FOR RELIEF REQUESTED**

**I.     THE COURT SHOULD AUTHORIZE, BUT NOT DIRECT, THE DEBTORS, IN THEIR DISCRETION, TO PAY THE CRITICAL VENDOR CLAIMS**

    **A.     Paying Critical Vendor Claims is in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code**

21.     Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business.  Indeed, a debtor in possession has a duty to protect and preserve the value of its estate, and may pay prepetition claims if necessary for the debtor to fulfill that duty.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").  The *CoServ* court specifically noted that preplan satisfaction of prepetition

9

claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate[.]" *Id.*

22.     The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtors' fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

23.     Here, payment of the Critical Vendor Claims meets each prong of the *CoServ* test. First, as described in the protocol above, the Debtors have narrowly tailored the definition of "Critical Vendors" to encompass only those vendors that provide Critical Goods and Services and may refuse to provide those goods and services absent payment of their prepetition claims. Second, because of the essential nature of the Critical Goods and Services provided by the Critical Vendors and the difficulty associated with finding alternate sources for those Critical Goods and Services, the potential harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform, as further described above, is disproportionate to the amount of any Critical Vendor Claim sought to be paid.  Third, with respect to each of the Critical Vendor Claims, the Debtors have examined other legal options short of payment of such Critical Vendor Claims and have determined that there exists no practical or legal alternative to payment of the Critical Vendor Claims.

> ### B.    Payment of the Critical Vendor Claims is Appropriate Under Section 363(b)

24.     Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).

Courts have authorized relief under section 363(b) where a debtor demonstrates a sound business justification for such relief. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that a "debtor must articulate some business justification, other than mere appeasement of major creditors").

25.      Once a debtor has articulated a valid business justification, there "'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  This business judgment rule applies in chapter 11 cases like these.  *Id.* (noting that the "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11").

26.      As discussed above, the Debtors have determined, in the sound exercise of their business judgment, that the Critical Goods and Services provided by the Critical Vendors are vital to the Debtors' continuing business operations.  As such, the failure to honor their prepetition obligations to the Critical Vendors could have a significant adverse effect on the Debtors' continued operation and their ability to maximize the value of their estates through a section 363 sale process.  Accordingly, the preservation and protection of the Debtors' business through ongoing relationships with the Critical Vendors provides a sufficient business

justification for payment of Critical Vendor Claims, even if such payment were deemed to be outside the ordinary course of business.  *See Ionosphere Clubs*, 98 B.R. at 17.

27.     The Debtors, therefore, seek authorization under section 363(b) of the Bankruptcy Code to pay the Critical Vendor Claims.

   **C.     The Doctrine of Necessity and Section 105(a) of the Bankruptcy Code**
   **Further Support Payment of the Critical Vendor Claims**

28.     Finally, the Debtors' proposed payment of the Critical Vendor Claims also should be authorized pursuant to section 105 of the Bankruptcy Code and under the "doctrine of necessity."   Section 105(a) of the Bankruptcy Code authorizes the Court to enter any order "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.   11 U.S.C. § 105(a).  Under the doctrine of necessity, the Court can authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.[5]  *See In re Lehigh & New England Ry. Co.*, 675 F.2d at 581 (authorizing payment of creditors' claims under "necessity of payment" doctrine); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor cannot survive absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that the debtors may pay pre-petition claims that are essential to continued operation of business).

---

[5]     The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority under section 105(a).   The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport Railway Company*, 106 U.S. 286 (1882), in affirming the lower court's authorization of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See id.* at 309–14.   The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*.  *See In re Lehigh & New England Ry.*, 657 F.2d 570, 581–82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

29.     For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the value of their business to effectuate a successful sale under section 363 of the Bankruptcy Code, payment of the Critical Vendor Claims is essential to the Debtors' chapter 11 cases.  In particular, and as further set forth above, without payment of the Critical Vendor Claims, the Debtors likely will incur exorbitant costs to find alternative sources for the Critical Goods and Services currently provided by the Critical Vendors, lose customers due to interruptions in service, and even breach key contractual obligations to their customers. Therefore, payment of the Critical Vendor Claims should be authorized pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity.

## II.     THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS THE DEBTORS' PAYMENTS ON ACCOUNT OF THE CRITICAL VENDOR CLAIMS

30.     The Debtors represent that they have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  As a result of the commencement of these chapter 11 cases and in the absence of an order of the Court providing otherwise, the Debtors' checks and electronic fund transfers in respect of the Critical Vendor Claims may be dishonored or rejected by financial institutions.  Under the Debtors' cash management system, the Debtors can readily identify checks or transfers as relating directly to payment of Critical Vendor Claims.  Accordingly, the Debtors believe that prepetition checks and transfers other than those for Critical Vendor Claims will not be honored inadvertently.  The Debtors submit that any Bank should be authorized to rely on the representations of the Debtors with respect to whether any check drawn or transfer request issued by the Debtors prior to the Petition Date should be honored pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

31.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," the Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date. Fed. R. Bankr. P. 6003.  As discussed above, the Debtors submit prompt payment of the Critical Vendor Claims is necessary to avoid the immediate and irreparable harm that could result from the Critical Vendors depriving the Debtors of Critical Goods and Services at this crucial time in their restructuring.  As set forth in this Motion, non-payment of Critical Vendor Claims that are currently outstanding or will become due and payable could disrupt the Debtors' operations, jeopardize key customer relationships, and undermine the Debtors' efforts to maximize the value of their estates.  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief requested on the terms described herein.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004 (a) AND 6004(h)

32.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, failure to pay the Critical Vendor Claims would be detrimental to the Debtors, their estates, and their creditors.

33.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

34.     Nothing contained herein is or should be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' rights to dispute any claim

on any grounds, (iii) a promise to pay any claim, (iv) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, or (v) something otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

35.     Notice of this Motion will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to Wells Fargo Bank, N.A.; (iii) counsel to Capital Farm Credit, FLCA; (iv) counsel to Black Diamond Commercial Finance, L.L.C.; and (v) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors, as filed with the Debtors' chapter 11 petitions.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter Interim Order, substantially in the form annexed hereto as _Exhibit A_, and the Final Order, substantially in the form annexed hereto as _Exhibit B_, granting the relief requested by this Motion and such further relief as may be just and proper under the circumstances.

Dated:  May 29, 2018
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ M. Blake Cleary_

M. Blake Cleary (No. 3614)
Sean T. Greecher (No. 4484)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

_Proposed Counsel to the Debtors and Debtors in Possession_

**EXHIBIT A**

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.**[1] | Case No. 18-11272 (___) |
| Debtors. | Jointly Administered |
| | **RE: Docket No. ___** |

## INTERIM ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, (II) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) SETTING A FINAL HEARING RELATED THERETO

Upon the motion (the "**Motion**")[2] of the Debtors requesting entry of interim and final orders, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, the prepetition claims of certain Critical Vendors; and (ii) authorizing the Banks to honor all related checks and electronic transfer requests; and upon the First Day Declaration; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court may enter a final order consistent with Article III of the United States Constitution; and proper and adequate notice of the Motion and the hearing thereon having been given; and it appearing that no other or further notice being necessary; and it appearing that the legal and factual bases set forth in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion establish just cause for the relief granted herein; and this Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on an INTERIM BASIS to the extent provided herein.

2.      The Debtors are hereby authorized, but not required, to pay, in their sole discretion, without further order of this Court, the Critical Vendor Claims.  Notwithstanding the foregoing, payments on account of Critical Vendor Claims shall not exceed $2.5 million without further order of this Court.

3.      The Debtors shall undertake appropriate efforts to cause the Critical Vendors to enter into Trade Agreements with the Debtors substantially in the form of the letter annexed as Exhibit C to the Motion as a condition to payment of the Critical Vendor Claims.

4.      The Debtors are authorized to (a) make payment on account of Critical Vendor Claims in the absence of a Trade Agreement and (b) subject to the voluntary, written agreement (which may be by email) of the affected Critical Vendor, modify the Customary Trade Terms (including contractual terms), even if less favorable to the Debtors, in the absence or as part of a Trade Agreement, after the Debtors have undertaken appropriate efforts to cause the Critical Vendor to execute a Trade Agreement and if the Debtors determine that failure to pay the Critical Vendor Claim presents a material risk of irreparable harm to the Debtors' business.

5.      If a Critical Vendor refuses to supply goods or services to the Debtors on Customary Trade Terms following receipt of payment on its Critical Vendor Claim or fails to comply with any Trade Agreement entered into by such Critical Vendor and the Debtors, the

Debtors may, in their sole discretion, and without further order of this Court, (i) declare that any Trade Agreement between the Critical Vendor and the Debtors is terminated and (ii) declare that payments made to the Critical Vendor on account of its Critical Vendor Claim be deemed to have been made in payment of then-outstanding postpetition claims of such Critical Vendor without further order of this Court, and seek to recover any payments made to such Critical Vendor on account of its Critical Vendor Claim to the extent that payments on account of such Critical Vendor Claim exceed the postpetition claims of such Critical Vendor then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or section 503(b)(9) claims, or otherwise.  In the event that a Trade Agreement is terminated or a Critical Vendor refuses to supply goods or services to the Debtors following receipt of payment on its Critical Vendor Claim (regardless of whether such Critical Vendor has entered into a Trade Agreement), it is the explicit intention of this Court to return the parties to their position immediately prior to the entry of this Order with respect to all prepetition claims.

6.      The Debtors may, in their sole discretion, reinstate a terminated Trade Agreement if: (i) such determination is subsequently reversed by this Court after notice and a hearing following a motion by the Critical Vendor, for good cause shown, that the determination was materially incorrect; (ii) the underlying default under the Trade Agreement was fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor that a default had occurred; or (iii) the Debtors reach a favorable alternative agreement with the Critical Vendor.

7.      The Debtors shall maintain a matrix summarizing:  (i) the name of each Critical Vendor paid; (ii) the amount paid to each Critical Vendor on account of its Critical Vendor Claim; and (iii) the type of goods and services provided by each Critical Vendor.  This matrix

shall be updated regularly and a copy provided, upon reasonable request, to: (i) counsel and other professionals of the agent to the Debtors' postpetition lenders; (ii) counsel to any statutory committee appointed in these chapter 11 cases, upon execution of a confidentiality agreement in a form satisfactory to the Debtors; and (iii) counsel to the Debtors' prepetition secured lenders. Recipients of the matrix shall keep it confidential and not disclose it to anyone, except their respective professional advisors or as otherwise authorized by the Debtors or this Court.

8.      The Banks are authorized to rely on the Debtors' direction to pay amounts in accordance with this Order, provided that sufficient funds are available in the applicable accounts to make the payments.

9.      The provisions contained herein shall not be construed to limit, or in any way affect, the Debtors' ability to contest any claims, including any Critical Vendor Claims, on any ground permitted by applicable law, and neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.  Nothing in this Order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under section 365 of the Bankruptcy Code.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

10.      The deadline by which objections to the Motion and the Final Order must be filed is _____, 2018, at 4:00 p.m. (ET).  Objections must be served on:  (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary, Esq. (mbcleary@ycst.com) and Sean T.

Greecher, Esq. (sgreecher@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Jane Leamy, Esq. (Jane.M.Leamy@usdoj.gov); (iii) counsel to Wells Fargo Bank, N.A., as pre-petition secured lender, Pillsbury Winthrop Shaw Pittman LLP, Attn: M. David Minnick, Esq. (dminnick@pillsburylaw.com); and (iv) counsel to any statutory committee appointed in these chapter 11 cases. A final hearing, if required, on the Motion will be held on _____, 2018, at _____ __.m. (ET). If no objections are filed to the Motion, this Court may enter the Final Order without further notice or hearing.

11.    The requirements of Bankruptcy Rule 6003 are satisfied.

12.    The requirements of Bankruptcy Rule 6004(a) are waived.

13.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

14.    This Order, and all acts taken in furtherance of or reliance upon this Order, shall be effective, notwithstanding the filing of an objection, pending the entry of the Final Order by this Court.

15.    This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Order.

Dated:  May _____, 2018
          Wilmington, Delaware

_____

United States Bankruptcy Judge

**EXHIBIT B**

**Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.**[1] | Case No. 18-11272 (___) |
| Debtors. | Jointly Administered |
| | **RE: Docket Nos. ___ & ___** |

## FINAL ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of the Debtors requesting entry of interim and final orders, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, the prepetition claims of certain Critical Vendors and (ii) authorizing the Banks to honor all related checks and electronic transfer requests; and upon the First Day Declaration; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court may enter a final order consistent with Article III of the United States Constitution; and proper and adequate notice of the Motion and the hearing thereon having been given; and it appearing that no other or further notice being necessary; and it appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748). The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on a FINAL BASIS to the extent provided herein.

2.      The Debtors are hereby authorized, but not required, to pay, in their sole discretion, without further order of this Court, the Critical Vendor Claims.  Notwithstanding the foregoing, payments on account of Critical Vendor Claims shall not exceed $5 million without further order of this Court.

3.      The Debtors shall undertake appropriate efforts to cause the Critical Vendors to enter into Trade Agreements with the Debtors substantially in the form of the letter annexed as Exhibit C to the Motion as a condition to payment of the Critical Vendor Claims.

4.      The Debtors are authorized to (a) make payment on account of Critical Vendor Claims in the absence of a Trade Agreement and (b) subject to the voluntary, written agreement (which may be by email) of the affected Critical Vendor, modify the Customary Trade Terms (including contractual terms), even if less favorable to the Debtors, in the absence or as part of a Trade Agreement, after the Debtors have undertaken appropriate efforts to cause the Critical Vendor to execute a Trade Agreement and if the Debtors determine, in their sole discretion, that failure to pay the Critical Vendor Claim presents a material risk of irreparable harm to the Debtors' business.

5.      If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Critical Vendor Claim or fails to comply with any Trade Agreement entered into by such Critical Vendor and the Debtors, the

Debtors may, in their sole discretion, and without further order of this Court, (i) declare that any Trade Agreement between the Critical Vendor and the Debtors is terminated and (ii) declare that payments made to the Critical Vendor on account of its Critical Vendor Claim be deemed to have been made in payment of then-outstanding postpetition claims of such Critical Vendor without further order of this Court, and seek to recover any payments made to such Critical Vendor on account of its Critical Vendor Claim to the extent that payments on account of such Critical Vendor Claim exceed the postpetition claims of such Critical Vendor then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or section 503(b)(9) claims, or otherwise.  In the event that a Trade Agreement is terminated or a Critical Vendor refuses to supply goods or services to the Debtors following receipt of payment on its Critical Vendor Claim (regardless of whether such Critical Vendor has entered into a Trade Agreement), it is the explicit intention of this Court to return the parties to their position immediately prior to the entry of this Order with respect to all prepetition claims.

6.    The Debtors may, in their sole discretion, reinstate a terminated Trade Agreement if: (i) such determination is subsequently reversed by this Court after notice and a hearing following a motion by the Critical Vendor, for good cause shown, that the determination was materially incorrect; (ii) the underlying default under the Trade Agreement was fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor that a default had occurred; or (iii) the Debtors reach a favorable alternative agreement with the Critical Vendor.

7.    The Debtors shall maintain a matrix summarizing:  (i) the name of each Critical Vendor paid; (ii) the amount paid to each Critical Vendor on account of its Critical Vendor Claim; and (iii) the type of goods and services provided by each Critical Vendor.  This matrix

shall be updated regularly and a copy provided, upon reasonable request, to: (i) counsel and other professionals of the agent to the Debtors' postpetition lenders; (ii) counsel to any statutory committee appointed in these chapter 11 cases, upon execution of a confidentiality agreement in a form satisfactory to the Debtors; and (iii) counsel to the Debtors' prepetition secured lenders. Recipients of the matrix shall keep it confidential and not disclose it to anyone, except their respective professional advisors or as otherwise authorized by the Debtors or this Court.

8.      The Banks are authorized to rely on the Debtors' direction to pay amounts in accordance with this Order, provided that sufficient funds are available in the applicable accounts to make the payments.

9.      The provisions contained herein shall not be construed to limit, or in any way affect, the Debtors' ability to contest any claims, including any Critical Vendor Claims, on any ground permitted by applicable law, and neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.  Nothing in this Order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under section 365 of the Bankruptcy Code.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person

10.     The requirements of Bankruptcy Rule 6004(a) are waived.

11.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

12.     This Court shall retain jurisdiction over any and all matters arising from or related
to the interpretation or implementation of this Order.

Dated: _____, 2018
   Wilmington, Delaware

             _____

             United States Bankruptcy Judge

# EXHIBIT C

**Form of Trade Agreement**

TO:    **[Critical Vendor]**
       **[Name]**
       **[Address]**

Dear Valued Vendor:

As you are aware, Color Spot Holdings, Inc. and certain of its affiliates (collectively, the "<u>Company</u>") filed voluntary petitions (the "<u>Chapter 11 Cases</u>") for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") on [●], 2018 (the "<u>Petition Date</u>").  On the Petition Date, in recognition of the importance of its relationship with vendors and suppliers and its desire that the Chapter 11 Cases have as little effect on such parties as possible, the Company requested the Bankruptcy Court's approval to pay the prepetition claims of certain critical vendors.  On [●], 2018, the Bankruptcy Court entered an interim order (the "<u>Order</u>") authorizing the Company, under certain conditions, to pay the prepetition claims, in accordance with the terms of the Order, of certain creditors that agree to the terms set forth below and agree to be bound by the terms of the Order.  A copy of the Order is enclosed for your reference.  The Company has asked the Bankruptcy Court to schedule a final hearing and thereafter grant the relief provided in the Order on a final basis.

Under the Order, to receive payment of its prepetition claim, each selected creditor must agree to continue to supply goods and/or services to the Company based on "Customary Trade Terms."  Pursuant to the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices, and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix, and availability and other applicable terms and programs), which were most favorable to the Company and in effect between such creditor and the Company on a historical basis for the period within one-hundred eighty (180) days of the Petition Date, or such other terms as mutually agreed to by the Company and such creditor.

For purposes of administering this program, as authorized by the Bankruptcy Court and in accordance with the terms of the Order, the Company and **[Name of Vendor]** agree as follows (the "<u>Agreement</u>"):

(a)    The estimated balance of your prepetition claim (net of any setoffs, credits, or discounts) (the "<u>Critical Vendor Claim</u>") is $_____ .  Your Critical Vendor Claim does not constitute a claim allowed by the Bankruptcy Court in the Chapter 11 Cases, and signing this Agreement does not excuse you from any requirement of filing a proof of claim in the Chapter 11 Cases.

(b)    The Company shall pay $_____ towards the Critical Vendor Claim (the "<u>Payment</u>"), subject to the terms and conditions of this Agreement, and this Payment will be applied to your most recent invoices, [**it being understood that the remaining amount of your Critical Vendor Claim shall be forever released and waived/it being understood that the remaining amount of your Critical Vendor Claim is $_____**].

(c) **[Name of Vendor]** agrees to supply goods and/or services to the Company in accordance with Customary Trade Terms, and the Company agrees to pay **[Name of Vendor]** in accordance with such Customary Trade Terms.

(d) The open trade balance or credit line that **[Name of Vendor]** will extend to the Company for the provision of postpetition goods/services is $_____.

(e) In consideration for the Payment, you agree not to file or otherwise assert against the Debtors or their estates or any of their respective assets or property (real or personal) any lien (a "<u>Lien</u>") or claim for reclamation ("<u>Reclamation Claim</u>") or claim under section 503(b)(9) of the Bankruptcy Code (a "<u>503(b)(9) Claim</u>"), regardless of the statute or other legal authority upon which such Lien or Reclamation Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtor arising from agreements or other arrangements entered into prior to the Petition Date and, to the extent you have already obtained or otherwise asserted such a Lien, Reclamation Claim, or 503(b)(9) Claim, you shall take (at your own expense) whatever actions are necessary to remove such Lien or withdraw such Reclamation Claim or 503(b)(9) Claim unless your participation in the critical vendor payment program authorized by the Order (the "<u>Critical Vendor Program</u>") is terminated.

Your execution of this Agreement and return of the same to the Company constitutes an agreement by **[Name of Vendor]** and the Company:

(a) To be bound by the Customary Trade Terms (as modified herein) and, subject to the reservations set forth in the Order, to the amount of the Critical Vendor Claim set forth above;

(b) That **[Name of Vendor]** will continue to supply the Company with goods and/or services pursuant to the Customary Trade Terms (as modified herein) and that the Company will pay for such goods and/or services in accordance with the Customary Trade Terms (as modified herein);

(c) That **[Name of Vendor]** has reviewed the terms and provisions of the Order and that it consents to by bound by such terms, except as modified herein;

(d) That **[Name of Vendor]** will not separately seek payment for Reclamation Claims, 503(b)(9) Claims and similar claims outside of the terms of the Order unless its participation in the Critical Vendor Program is terminated;

(e) That if either the Critical Vendor Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Critical Vendor Claim will be deemed to have been in payment of postpetition obligations owed to you and the Company reserves all rights to seek recovery or disgorgement of any payments made to you on account of your Critical Vendor Claim to the extent that the aggregate amount of such payments exceeds such postpetition obligations, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or other defense;

(f)  That the Company will agree to pay **[Name of Vendor]** on terms in accordance with paragraph (b), hereinabove; and

(g)  That if the Company shall be in default under this Agreement, **[Name of Vendor]** shall have no obligation to supply goods and/or services to the Company on Customary Trade Terms (as modified herein) until the Company cures such default and **[Name of Vendor]** shall have the right to terminate this Agreement upon written notice to the Company detailing the Company's defaults hereunder (which the Company shall have the right to dispute) and the Company's failure to cure such default within five (5) business days of such notice, in which event **[Name of Vendor]** may retain all sums paid to it hereunder on account of its Critical Vendor Claim.

The Company and **[Name of Vendor]** also hereby agree that any dispute with respect to this Agreement, the Order, and/or **[Name of Vendor]**'s participation in the Critical Vendor Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our bankruptcy process, please do not hesitate to call **[Contact Person]** at (___) ___-____.

Sincerely,

**[Debtor Entity]**

By:_____
    Name: [•]
    Title: [•]

Agreed and Accepted by:
**[Name of Vendor]**

By:_____
    Name: [•]
    Title: [•]

Dated: _____